# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA

WILLIAM LEON BAUDERS,　　　　)
(DOC# 705618)　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　Petitioner,　　　)
　　　　　　　　　　　　　　　　　　)
vs.　　　　　　　　　　　　　　　　)　　　**Case No. 17-cv-209-JHP-FHM**
　　　　　　　　　　　　　　　　　　)
JAMES YATES, Warden,　　　　　　)
Davis Correctional Facility,　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　Respondent.　　　)

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254 & REQUEST FOR AN EVIDENTARY HEARING

Petitioner, William Bauders, by and through his attorney, Michael Arnett, in custody pursuant to a finding of a jury in the District Court of Tulsa County, Oklahoma, pursuant to 28 U.S.C. § 2254, the Rules Governing Proceedings in the United States District Courts under said section, and the Due Process and Effective Assistance of Counsel Provisions of the Fifth and Sixth Amendments to the United States Constitution, respectfully moves this Court for its order vacating the conviction and sentence in *State of Oklahoma v. William Bauders*, no. CF-2014-78.

This pleading is set forth in the form dictated by the Rules Governing Proceedings in the United States District Courts under § 2254 of Title 28, United States Code, and the Model Form for Motions under 28 U.S.C. § 2254. The opening section states the offense of conviction and sentence imposed; Part I sets forth the history of this proceeding through trial and direct review; Part II sets forth any collateral proceedings that were pursued; Part III stakes the grounds and supporting facts upon which Petitioner claims his

conviction is in violation of the Constitution; and, Parts IV and V contain further required technical information.

In support of this request for relief, Petitioner states the following:

## CONVICTION AND SENTENCE IMPOSED

1. *Name and location of court where conviction entered.*

Conviction and sentence in Case No. CF-2014-78 was imposed by the District Court of Tulsa county, Oklahoma, the Honorable Judge Bill Musseman, presiding.

2. *Date of judgment and conviction.*

Petitioner was tried by jury and convicted on October 10, 2014 of five (5) separate counts of: Count I, Second Degree Felony Murder; Count II, Possession of a Stolen Vehicle; Count III, Grand Larceny; Count IV, Leaving the Scene of a Fatality Accident; Count V, Driving with a Suspended/Revoked License.

3. *Nature of the offense involved.*

Petitioner was charged by information with five (5) separate counts: Count 1, Felony Murder-Second Degree; Count 2, Possession of a Stolen Vehicle; Count 3, Grand Larceny; Count 4, Leaving the Scene of a Fatality Accident; Count 5, Driving under Suspension of Driver's License.

4. *Length of sentence.*

On December 8, 2014, Petitioner was sentenced as the jury had recommended to Count 1: Felony Murder-Second Degree- Life; Forty-Five (45) years imprisonment in a State penal institution; Count 2, Possession of a Stolen Vehicle- Five (5) years of

2

imprisonment; Count 3: Grand Larceny, two (2) years imprisonment; Count 4, Leaving the Scene of a Fatality Accident- Ten (10) years imprisonment; Count 5, Driving with License Suspended, $500 fine. All sentences to run consecutively.

5. *Details of Petitioner's plea.*

Petitioner plead not guilty.

## PART I- TRIAL AND DIRECT REVIEW

1. *Kind of Trial.*

Petitioner had a jury trial, tried by twelve (12) of his peers.

2. *Whether Petitioner Testified.*

Petitioner testified at trial to admitting that he drove the pickup, committed the crime, and had no intention of hurting anyone.

3-5. *Kind of Appeal.*

Petitioner filed an appeal from the judgment and conviction in the Oklahoma Court of Criminal Appeals, No. F-2014-1064. On appeal Petitioner argued the trial court should have suppressed statements under spousal privilege; that the second phase of police interrogation should have been suppressed because it was coercive; that the district court abused its discretion by not allowing lesser included instructions; the jury's verdict of felony murder-second degree, was confusing and contrary to law; and that trial counsel was ineffective.

On in an unpublished Opinion filed on April 19, 2016, the Oklahoma Court of Criminal Appeals affirmed the judgment and sentences of the District Court of Tulsa

3

County.

Petitioner did not petition the United States Supreme Court for a writ of *certiorari*.

## PART II- COLLATERAL PROCEEDINGS

1. *Previous petitions, applications, or motions.*

Petitioner has no collateral proceedings at this time.

2-4. *Other proceedings.*

Petitioner has filed no other petitions in state court in relation to this conviction. Petitioner has filed no previous petitions for habeas corpus relief in federal court with respect to this conviction. There are no other legal proceedings pending in any court other than this petition with respect to this conviction.

## PART III – PETITIONER'S CLAIMS

Petitioner asserts that his conviction and sentence are in violation of the Constitution of the United States in that: (1) his confession should have never been admissible at trial because it was coerced by law enforcement in violation of the Fifth Amendment and the principles enunciated in the Supreme Court's opinion in *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); (2) he was convicted of an offense for which he was entitled to a lesser included instruction as guided by the 10th Circuit case of *Gilson v. Sirmons*, 520 F.3d 1196 (10th Cir. 2008); and, (3) he was denied the effective assistance of counsel as guaranteed by the Sixth Amendment and the principles enunciated in the Supreme Court's seminal opinion of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984), and its progeny.

4

I.    Statement of Facts

Following a jury trial, Petitioner William Bauders was found guilty of felony murder-second degree; possession of a stolen vehicle; grand larceny; leaving the scene of a fatality collision; driving with license suspended. (Vol. V, Pg. 702-703). At trial the State introduced evidence that on January 1, 2014, a 1992 Dodge pickup was reported stolen by Dennis Sanders. (Vol. II, Pgs 305-312). At about 10:30 a.m. William Rose and Kathy Alsobrook saw a Dodge pickup hooked to a trailer and pulling the trailer from a lot on S. Norwood, in Tulsa, Oklahoma. (Vol. II, Pg. 336, 339). The couple followed in pursuit because they believed a possible crime was being committed. (Vol. II, Pg. 340). At one point during the chase, Ms. Alsobrook saw a man get out of the Dodge pickup and then jump back into the truck. (Vol. III, Pg. 414). Later at trial, Ms. Alsobrook testified and identified that man as Mr. Bauders. (Vol. III, Pg. 415). Moments later, a flash of light was seen and upon approach to where that flash came from, the Dodge pickup was found in the middle of the road along with the victim's vehicle. (Vol. III, Pg. 421). The victim was found deceased. (Vol. III, Pg. 422).

A. *Jackson v. Denno* Hearing

An interview was held with the Mr. Bauders by Officer Matt Rose and Officer Chris Witt at approximately 11:30 p.m. at the Tulsa County Detective Division in an interview room. The interview consisted of two phases; the first with Officer Witt. A video was made of it. (JD, Pg. 10, Ln. 2-18.)

Mr. Bauders was placed in a holding area and handcuffed to a bench. (JD,

5

Pg. 11-12.) Officer Rose went into the holding area and spoke to him, none of which was recorded. Officer Rose awakened the Mr. Bauders, and testified to the conversation: "This is your arrest and booking sheet. I explained the charges that I had written on the front of the arrest and booking sheet, and I simply stated to him that I didn't think this was the way he wanted to go away from here." (JD, p. 12, ln. 11-19.) The Officer further stated that it was late evening or early morning. (JD, Pg. 12. Ln. 20-24.) Also, see Officer Rose's testimony, Vol. IV, Pg. 554, ln.12-25.)

Further, Officer Rose testified: "Then I just told him that I thought he had more to say. I didn't think that any person should go away without giving some sort of statement. I told him we had evidence to believe that he did commit the crime and that I did not want him to go into county jail without at least giving us some type of statement concerning the collision." (JD, Pg.13, ln.6-12.) Then the Mr. Bauders was taken into the interrogation room again. Officer Rose testified that the second interview lasted 40 to 45 minutes. (JD, Pg. 6, Ln. 8.)

Mr. Bauders testified: "I told him, 'Man that is a lot of charges to be facing with two kids, one on the way, and a wife and family, and you know and everything else.' And he basically told me, that if I would go in there and tell them-basically admit guilt, that it would better, not just for, one, in front of a jury of my peers, but also he could get the District Attorney to drop it down to vehicular manslaughter." (JD, Pg. 40, ln. 5-12).

6

When asked what Mr. Bauders thought the officer meant, he stated: " He told me he could get it done, yes, sir." (JD, Pg. 30, In. 16). Mr. Bauders testified that promise was the reason why he gave the second interview; that he would not have talked to them a second time otherwise. (JD, Pg. 40-41.)

The Court found that both confession statements were admissible.

**B. Pretrial Proceedings**

Prior to trial, the district court held an ex parte strategy hearing that was on record. (Vol. I, Pg. 27). During that hearing, defense counsel spoke with the district court about the strategy of the trial that he was going forward with. This strategy included conducting the trial as a "sentencing trial" in which counsel would argue for lesser included of felony murder. (Vol. I, Pg. 28). The district court then questioned Mr. Bauders if he had been advised and if he agreed to the decision in having a "sentencing trial" to which Mr. Bauders answered in the affirmative. (Vol. I, Pg. 29-31). The district court also notified both Mr. Bauders and his counsel that he did not know if lesser includes would be applicable in the case. (Vol. I, Pg. 31). Furthermore, the court advised the defendant that his attorney had not requested the court to consider any lesser included instructions. (Id). The court further advised that because the trial had not commenced and the evidence had not been heard, that there were unknown factors in whether or not the lesser included instructions would be given. (Vol. I, Pg. 32). Mr. Bauders agreed to continue to trial. (Vol. I, Pg. 32).

## C. Trial Evidence

The State's evidence consisted primarily of witnesses to the accident, responding police officers, and the officer whom elicited Mr. Bauders' confession. For the defense's case in chief, Mr. Bauders testified on his own behalf.

Right from the opening statement, defense counsel admitted to Mr. Bauders' was guilty of killing the victim. (Vol. II, Pg. 260, Ln. 18-19). Counsel also told the jury that the defense was to have the jury sentence Mr. Bauders in a reasonable way. (Vol. II, Pg. 261, Ln. 2-3).

The first to testify was the victim's mother, Deanna Jones. She testified that she was the last person to have any contact with the victim. (Vol. II, Pg. 263). She also identified the victim from a photograph taken while she was living. (Vol. II, Pg. 266).

Officer Jeff Olomon testified that he responded to a report of an injury collision. (Vol. II, Pg. 269). The officer testified that he determined the Dodge pickup was stolen from Tulsa. (Vol. II, Pg. 272).

Throughout the remainder of the State's case-in-chief, numerous officers testified as to the accident scene, the investigation, the victims from the charge of Grand Larceny, and the medical examiners. The State's principal witnesses, William Rose and Kathy Alsobrook, testified as witnesses to the incident.

Mr. Rose testified that he and his girlfriend saw a maroon Dodge pickup pull out of a driveway with a trailer attached. (Vol. II, Pg. 339). He called 911 while following the pickup. (Vol. II, Pg. 341). He further testified that he saw the Dodge pickup not stop at

stop signs and observed the crash. (Vol. II, Pg. 345). Mr. Rose testified that he did not have a firearm in his vehicle. (Vol. II, Pg. 359).

Ms. Alsobrook testified that herself and her boyfriend were in the vehicle together at the time she witnessed the incident. (Vol. III, Pg. 412). She testified that she saw a Dodge pickup hooking up to an enclosed trailer that had been there for weeks and used only by construction workers. (Vol. III, Pg. 412-413). After the pickup left the lot, Ms. Alsobrook and her companion followed the vehicle because it appeared suspicious. (Vol. III, Pg. 414). At one point the driver stopped and stepped out of the pickup, looked at Ms. Alsobrook, and got back in the vehicle. (Vol. III, Pg. 414-415). Ms. Alsobrook identified that person as Mr. Bauders in court. (Vol. III, Pg. 415). The pickup drove on and at one point during the chase, Ms. Alsobrook witnessed what she described as "a big burst" like "a transformer" had been hit. (Vol. III, Pg. 421). She came upon a crash involving the pickup; but the driver was not there. (Vol. III, Pg. 421-422).

The State rested and the defense counsel offered a general demur to the count of felony murder which was overruled. (Vol. IV, Pg. 579). The defense then put on its case-in-chief calling their only witness, the Petitioner, Mr. Bauders.

Mr. Bauders testified that he used the pickup to take the trailer on January 1, 2014. (Vol. IV, Pg. 583). He noticed that and SUV was parked up the block and became nervous. (Vol. IV, Pg. 584). Also, he admitted he exited the pickup to check if the trailer was still attached after pulling out of the driveway. (Vol. IV, Pg. 584). While he was checking on the trailer, he believed that the passenger of the SUV had something in her

9

hand, not sure of what it was, he fled. (Vol. IV, Pg. 585-586). Mr. Bauders admitted telling the officers that he was nervous when he told officers he believed that he saw a gun. (Vol. IV, Pg. 586). The flight from the couple ensued and Mr. Bauders testified the chase took him through Braden Park and reached speeds of 60 to 65 miles-per-hour, never stopping at the intersections the proceeded through. (Vol. IV, Pg. 588-591). The crash happened in an instant after Mr. Bauders looked behind him at the chasing SUV and then only saw the front end of a car for a second, the next thing he remembered was waking up in the pickup. (Vol. IV, Pg. 591-592). After waking up, he fled on foot and ended up at his friend's house. (Vol. IV, Pg. 592-593). He was later arrested at his father's house. (Vol. IV, Pg. 594). After Mr. Bauders testified, the defense rested. (Vol. IV, Pg. 623).

After both the State and defense rested, the district court held a jury instruction conference. (Vol. IV, Pg. 627). Defense counsel requested that in addition to the jury instructions that the lesser included instructions of manslaughter in the first degree, a misdemeanor and negligent homicide. (Vol. IV, Pg. 627-628). As for manslaughter it he first degree, defense counsel argued that Mr. Bauders was in the commission of the misdemeanor driving under revocation and that the jury, upon finding the fact he fled the scene, could find him guilty of manslaughter in the first degree. (Vol. IV, Pg. 628). Furthermore, defense counsel argued the negligent homicide instruction should be given because the testimony reflected that Mr. Bauders was driving recklessly. (Vol. IV, Pg. 628). The district court denied the request for an instruction on lesser included offences

10

based off the testimony and evidence presented in the case. (Vol. IV, Pg. 628).

During close, defense counsel admitted that the trial was not about innocence or guilt, rather it was about sentencing. (Vol. V, Pg. 661). Counsel went on to argue to the jury that this was a sentencing trial. (Vol. V, Pg. 663). It was suggested, by defense counsel, that fifteen years on felony murder would be appropriate. (Vol. V, Pg. 675).

After deliberations concluded, the jury found Mr. Bauders guilty on all five Counts, including Count 1: felony murder, second degree. (Vol. V, Pg. 702).

### D.  Appeal and Post Trial Proceedings

On direct appeal, Mr. Bauders' argued that the trial court should have suppressed the testimony of Erin Koopman pursuant to spousal privilege; the court should have suppressed "phase two" of his confession because it was psychologically coerced by law enforcement; the district court abused its discretion by not giving the instructions for lesser included offenses as requested by counsel; the jury verdict in felony murder, second degree was confusing and contrary to law; and trial counsel was ineffective for several reasons and that the trial "only on the issue of punishment" was unconstitutional. In an order entered on April 19, 2016, the appellate court affirmed his conviction. *William Leon Bauders vs. The State of Oklahoma*, No. F-2014-1064 (not for publication), a copy of which is attached as Exhibit A. From that decision, Mr. Bauders brings this Petition.

II.    **The Oklahoma Court of Criminal Appeal's Decisions Related to Issues Raised by William Leon Bauders, Constitute Unreasonable Applications of Relevant Supreme Court Law.**

On federal habeas review, a petition for a writ of habeas corpus may be granted where the state court's adjudication of the claim has resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). The federal court may also grant relief if the state court's adjudication of the claim resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2). A federal court may grant habeas relief when a state court has misapplied a governing legal principle to a set of facts different from the case in which the principle was announced. *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527 (2003). Thus, a writ of habeas corpus may be granted when the state court's application of the governing legal principle was objectively unreasonable. *Id.*

### i.    Coercion of a Confession in Violation of the Fifth Amendment to the United States Constitution.

When a habeas petitioner challenges a factual finding subsidiary to a legal determination, the challenge necessarily implicates both the accuracy of the finding and the correctness of the legal conclusion. *See Maynard v. Boone,* 468 F.3d 665, 673 (10th Cir. 2006) (explaining applicability of § 2254(d)(1) and § 2254(d)(2) to mixed questions of law and fact such as sufficiency of the evidence, on habeas review).

A federal court will review the voluntariness of a confession *de novo* if the petitioner satisfies 28 U.S.C. § 2254(d)(2). *Byrd v. Workman*, 645 F.3d 1159, 1172 (10th Cir. 2011). To overcome deference to the state court under § 2254(d)(2), Mr. Bauders

must show the state court's voluntariness decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). It is not sufficient to show that "[r]easonable minds reviewing the record might disagree" about the state supreme court's finding. *Rice v. Collins*, 546 U.S. 333, 341-42, 126 S.Ct. 969, 976, 163 L.Ed.2d. 824 (2006). "[W]here the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable." *Byrd*, 645 F.3d at 1171-72

To determine whether a suspect's confession was voluntary, courts consider whether, under the totality of circumstances, the suspect's "will has been overborne and his capacity for self-determination critically impaired." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973). "Under Supreme Court and Tenth Circuit precedent, a promise of leniency is relevant to determining whether a confession was involuntary and, depending on the totality of the circumstances, may render a confession coerced." *Clanton v. Cooper*, 129 F.3d 1147, 1159 (10th Cir. 1997).

A confession is involuntary unless it is "the product of a rational intellect and a free will." *Blackburn v. Alabama*, 361 U.S. 199, 208, 4 L.Ed.2d 242, 249, 80 S.Ct. 274 (1960); *Davis v. North Carolina*, 384 U.S. 737, 742, 16 L.Ed.2d 895, 897, 86 S.Ct. 1761 (1966). It is not the product of a rational intellect and a free will if the petitioner's will to resist confessing is overborne. *Rodgers v. Richmond*, 365 U.S. 534, 544, 5 L.Ed.2d. 760,

768, 81 S.Ct. 735 (1961). An accused's will can be overborne by pressures endangered by physical or psychological coercion on the part of law enforcement officers. *Rogers*, supra.

The questioning of Mr. Bauders had been long and extensive, it was late at night and the he had been deprived of sleep. (See JD, Pg. 12, In, 16.) In addition to the initial interrogation, which was lengthy in and of itself, the Mr. Bauders was placed in a holding room for several minutes while the officers completed forms, where there was no video recording being made. (JD, Pg. 11.) The "second phase" interrogation took another forty-five minutes, into the early morning. Obviously, he was exhausted and had been deprived of sleep.

The officers used a psychological ploy to get the Mr. Bauders to go to the "phase two" interrogation. Officer Rose testified " I felt that during the interview with my Sergeant that Mr. Bauders had not gotten the opportunity to get everything off his chest." (Vol IV, Pg. 554, Jn.13-15.) Further officer Rose testifies as follows:

> Q. Do you have a particular approach that you use when you are interviewing suspects?
>
> A. You can call it an approach, yes.
>
> Q. And what approach is that you use?
>
> A. My approach or tactic, more or less, is just to be more of a victim (suspects?) rights guy with suspects. Other officers take different measures and approach to getting suspects to talk. I apply this with my routine traffic investigations, and any other burglary calls or auto theft suspects that I come in contact with. I really try to become, you know, their best friend."

14

(Vol IV, Pg. 556, Jn.10-18). This is admission of the use of a psychological ploy to get the Mr. Bauders to forget that he is being interrogated for a crime.

There is further evidence of this in Officer Rose's testimony at the *Jackson v Denno* hearing Officer Rose testified that he confronted Mr. Banders in the holding area, showed him his arrest and booking sheet, and stated "I didn't think this was the way that he wanted to go from here. (JD, Pg 12). Further Officer Ross testified:

> I told him man to man, this is your arrest and booking sheet. I explained what it was. I explained the charges I had written on the front of the arrest and booking sheet, and I simply stated to him that I didn't think that this was the way that he wanted to go away from here.

(JD, Pg 12, In. 13-19).

Further, Officer Rose testified:

> Then I just told him that I thought he had more to say. I didn't think that any person should go away without giving some sort of statement. I told him we had evidence to believe that he did commit the crime and that I did not want him to go into county jail without at least giving us some type of statement concerning the collision.

(JD, Pg.13, In.6-12).

Also, Officer Rose testified:

> A.  I did make statements to Mr. Bauders. I felt during the interview that Mr. Bauders may not have gotten the opportunity to get everything off his chest. I said that. To my belief. I went back in the holding area where he was and showed him the A & B, showed him the charges that were going to be brought against him and simply told him that I didn't feel this was all he had to say. For me, I really wanted

15

to give him the opportunity to give us some kind of reasons why what happened. We already knew that he was the driver, that caused this collision, that he ran from the scene. Our whole goal - my whole goal with Mr. Bauders was to get why. (Vol. IV. Pg. 554, ln. 12-25).

Officer Rose admitted using a psychological ploy to get the accused to return to the "second phase" of the interview. He went outside the parameters of fair interrogation processes and used deception in violation of the fundamentals of due process.

Mr. Bauders testified that he told officer Rose: "I told him, 'Man that is a lot of charges to be facing with two kids, one on the way, and a wife and family, and you know and everything else.' And he basically told me, that if I would go in there and tell them-basically admit guilt, that it would better, not just for, one, in front of a jury of my peers, but also he could get the District Attorney to drop it down to vehicular manslaughter." (JD, Pg. 40, ln. 8-12). Mr. Bauders testified that that meant that Officer Rose could do it. Mr. Bauders also said that he would not have gone into the second interrogation if this were not the case. This is four square with *Cahill, supra.*

The psychological ploy of Officer Rose was the cause of Mr. Bauders returning for "phase two" of the interrogation. The District Court found that Officer Rose was more believable, but that does not counteract the use of an unconstitutional psychological ploy to get Mr. Bauders back in for the "phase two" interrogation. A two-phase interrogation should be suspect in and of itself. But for

16

the Officer's ploy, Mr. Bauders would not have given the second statement. Additionally, had it not been for the confession, the he would not have gone to trial on punishment only. (Vol. I, Pg. 28, ln.18-28, Pg.29, ln.1-6).

On appeal, the Oklahoma Court of Criminal Appeals (OKCCA) held that the officer's physiological poly to coerce Mr. Bauders was nothing more than a "friendly attitude" and did not amount to psychological coercion. *See Bauders v. State*, F-2014-1064 (Exhibit C). The OKCCA ignored looking to Mr. Bauders' testimony and his state of mind as his belief of what he was agreeing to when he confessed.

## 1. The Oklahoma Court of Criminal Appeals' Error was not Harmless

A trial court's erroneous decision to admit an involuntary confession into evidence is subject to harmless error analysis. *Fulminante*, 499 U.S. at 295. "[I]n § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state court criminal trial under the 'substantial and injurious effect' standard" articulated in *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S.Ct. 1710,1713, 123 L.Ed.2d. 353 (1993). *Fry v. Pliler*, 551 U.S. 112, 121, 127 S.Ct. 2321, 2328, 168 L.Ed.2d. 16 (2007). Under *Brecht*, "an error is harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.'" Id. at 116 (quoting *Brecht*, 507 U.S. at 631). "'The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather whether the error itself had substantial influence.'" *Crease v. McKune*, 189 F.3d 1188, 1193 (10th Cir. 1999) (quoting *Kotteakos*

17

*v. United States*, 328 U.S. 750, 765, 90 L.Ed. 1557, 66 S.Ct. 1239 (1946)) (alterations omitted).

"When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,'" the error is harmful and the court must grant the writ. *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995); *see also id.* at 435 ("By 'grave doubt' we mean that, in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error."). Analyzing harmlessness under *Brecht*, "does not involve a judge who shifts a 'burden' to help control the presentation of evidence at a trial, but rather involves a judge who applies a legal standard (harmlessness) to a record that the presentation of evidence is no longer likely to affect." *Id.* at 437 (quoting R. Traynor, *The Riddle of Harmless Error*, 26 (1970)).

The state was required to prove Mr. Bauders guilt beyond a reasonable doubt. The state would not have met its burden if the inadmissible evidence had been properly suppressed.

ii.    **Mr. Bauders Was Denied Due Process When the State Court Erroneously Denied His Request for Jury Instructions on Lesser Included Offenses.**

Whether or not the sufficiently of the evidence supports giving a lesser included offense instruction is a mixed question of law and fact, reviewable in a habeas case under 28 U.S.C. 2254(d)(1). *Gilson v. Simons*, 520 F.3d 1196, 1233-34 (10th Cir. 2008). Typically, "[a]s a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, unless they are so fundamentally unfair

as to deprive petitioner of a fair trial and to due process of law." *Patton v. Mullin*, 425 F.3d 788, 807 (10th Cir. 2005) (quoting *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997)). In applying this standard, courts typically consider whether the denied instruction was warranted under the facts of the case. See, e.g., *Tyler v. Nelson*, 163 F.3d 1222, 1227 (10th Cir. 1999) (turning to state law to determine whether defendant was entitled to requested instruction); *Lujan v. Tansy*, 2 F.3d 1031, 1035–36 (10th Cir. 1993) (holding that refusal to give instruction did not violate due process where the record contained no evidence that would support the instruction). Sometimes the courts have even recognized "a rule of 'automatic non-reviewability' for claims based on a state court's failure, in a non-capital case, to give a lesser included offense instruction." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004). However, when the "errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial, habeas proceedings may be used to set aside state convictions based on erroneous jury instructions." *Brinlee v. Crisp*, 608 F.2d 839, 854 (10th Cir. 1979).

Mr. Bauders' was denied a fair trial when the trial court erroneously denied his request for jury instructions on lesser included offenses. Under Oklahoma law, a trial court should instruct on a lesser included or related offenses that are supported by the evidence that might allow a jury to acquit the defendant of the charged offense and convict him of the lesser offense. *Simpson v. State*, 2010 OK CR 6, ¶ 17, 230 P.3d 888, 897. In this case Manslaughter in the First Degree and Negligent Homicide are lesser

19

included offenses for second degree felony murder. The trial court denied the instructions because it ruled that the evidence did not support the instructions.

There was evidence presented at trial that Mr. Bauders had a suspended driver's license when the accident occurred. (Vol. IV, Pg. 619). This is *prime facie* evidence for manslaughter first degree. *State* v. *Ceaser,* 2010 OK CR 15. There was no evidence presented that Mr. Bauders knew the victim was dead at the time he fled. (Vol. IV, Pg. 596). Therefore, the jury could have decided that he was not guilty of leaving the scene of a Fatality Accident. Additionally, evidence certainly showed reckless disregard for others, *prime facie* of Negligent Homicide. Certainly, a jury could rationally have found the Mr. Bauders guilty of one of the lesser included offences, and acquitted him of the greater.

Mr. Bauders was anticipating the lesser included instructions would be given. His attorney advised him that he would get the lesser included instructions, albeit being warned by the judge that he may not include them if the evidence did not support the instructions. (Vol. I, Pg. 31). As stated above, there was proof the evidence did support the lesser included instructions be given. By denying those instructions the trial court limited the jury to only one charge they could convict Mr. Bauders. Therefore, he was deprived of a fundamentally fair trial when the trial court knowingly refused to allow the lesser included instructions, that Mr. Bauders was entitled to, when the trial court was aware that it was defense strategy to include the instructions.

Thus, the trial court record reflects there was sufficient evidence presented at trial to include a lesser included offense and Petitioner's due process rights were violated by the exclusion of the requested lesser included instructions. By leaving these instructions out made the trial fundamentally unfair because there was evidence to convict the Petitioner of a lesser included crime. Furthermore, the trial court knew this was defense counsel's strategy and although he was entitled to the instructions, they knowingly left the instructions out. The outcome and sentence of the trial could have been different had the trial court allowed for the supported lesser included jury instructions.

### iii. Petitioner was Denied the Effective Assistance of Counsel as Guaranteed by the Sixth Amendment and the Principles Enunciated in the Supreme Court's Seminal Opinion of *Strickland v. Washington* and its Progeny.

To make a successful claim of ineffective assistance of counsel, a defendant must show that: (1) counsel's performance was deficient; and, (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). Deficient performance is evaluated by determining whether counsel's assistance was objectively unreasonable considering all the circumstances. *Id.* at 688. However, the Supreme Court has "declined to articulate guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527 (2003), *quoting*, *Strickland*, 466 U.S. at 688.

A claim that deficient performance prejudiced the defense can be made by showing "there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Connor v. McBride*, 375 F.3d 643, 656-57 (7th Cir. 2004), *quoting*, *Strickland*, 466 U.S. at 694. The *Strickland* court further explained that for a defendant to show there is a "reasonable probability," it is not enough to show the errors had some conceivable effect on the outcome. *Strickland*, 466 U.S. at 669. On the other hand, the defendant "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.*, at 693.

### 1. Trial Counsel Ineffectively Assisted Mr. Bauders When Counsel Deviated from Prevailing Professional Norms

Trial counsel unilaterally made the decision to have a "sentencing trial" in Mr. Bauders' case. Trial counsel explained that a "sentencing trial" was one that Mr. Bauders would admit guilt and let the jury decide the punishment.

On October 6, 2017, prior to the beginning of trial at an ex parte hearing, trial counsel announced to the court the defense's strategy at trial was to have a "sentencing trial". (Vol. I, Pg. 28). The court asked the defendant numerous questions regarding his voluntariness and if counsel had discussed if this was the best trial strategy with him. (Vol. I, Pg. 29-30). Mr. Bauders agreed that trial counsel had discussed the strategy. (Vol. I, Pg. 29-30).

Although trying a case for punishment purpose only is primarily employed in capital defense cases to warrant mitigation in sparing a human's life, trial counsel made the decision to employ such a tactic in this case. However, while not entirely improper, the purposes of a punishment only trial is to provide the jury with some kind of

22

mitigating offense to be considered for sentencing. It is a prevailing professional norm that trial counsel would present mitigating factors to the jury such as the defendant's background, education, employment record, mental and emotional stability, and family relationships. Such factors are to be considered as mitigating roles in capital cases as noted in *Williams v. Taylor*, 529 U.S. 362, 396, 120 S.Ct. 1495 (2000). Albeit, Mr. Bauders' case was not a capital trial, nonetheless, counsel undoubtedly employed the same strategy.

These factors were neither presented as mitigation to the jury at trial, nor investigated by trial counsel. In 1980, the American Bar Association published the second edition of the STANDARDS FOR CRIMINAL JUSTICE (2nd edition 1980). Provided in that publication was Standard 4.4-1 of the Defenses Function which described the duty to investigate as "It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore *all* avenues leading to facts relevant to the merits of the case *and the penalty in the event of conviction*. (Emphasis added). *Id.*, at 4:53. Provided in the Commentary, "Information concerning the defendant's background, education, employment record, mental and emotional stability, family relationships, and the like, will be relevant, as will mitigating circumstances surrounding the commission of the offense itself." *Id.* at 4:55. The U.S. Supreme Court has found trial counsel ineffective in five cases for failing to investigate potential mitigation evidence: *Williams v. Taylor*, 529 U.S. 362 (2000); *Wiggins v. Smith*, 539 U.S.

510 (2003); *Rompilla v. Beard*, 545 U.S. 374 (2005); *Porter v. McCollum*, 558 U.S. 30 (2009); and *Sears v. Upton*, 561 U.S. 945 (2010).

In Mr. Bauders' case, trial counsel failed to present mitigating evidence to support Mr. Bauders' claim that he should receive a lesser sentence. There were no witnesses called on Mr. Bauders' behalf. Only Mr. Bauders himself testified. Trial counsel's decision to beg the jury for mercy without giving any mitigating evidence or support that Mr. Bauders should not be convicted at the maximum extent the law allowed (life) goes against the prevailing professional norms in cases where the strategic decision to go to trial admitting guilt and ask the jury for mercy is employed. Had trial counsel presented mitigating evidence at trial, the jury could have given Mr. Bauders a lesser sentence.

Therefore, because trial counsel went against prevailing professional norms in not presenting any mitigating evidence. Thus, Mr. Bauders was prejudiced and suffered from ineffective assistance of counsel.

## PART IV – REPRESENTATION

(A)-(G) Petitioner was represented at all proceedings in the trial court by attorney Richard Koller and Stephanie Collingwood, Assistant Public Defenders, 423 S. Boulder, Suite 300, Tulsa, Oklahoma. Petitioner was represented on direct appeal by M. Michael Arnett and John Thomas Hall of the Arnett Law Firm, 3133 N.W. 63rd Street, Oklahoma City, Oklahoma.

## PART V – FUTURE SENTENCE

Petitioner is currently serving a combined sentence of fifty-seven (57) years in the custody of the Oklahoma Department of Corrections, and has no future sentence to serve upon its competition.

WHEREFORE, Petitioner respectfully requests this Court to grant a writ of habeas corpus vacating his conviction and setting aside the sentence previously imposed. Petitioner further requests an evidentiary hearing at which she can present witnesses and evidence to further support the claims raised herein.

Respectfully Submitted,

/s M. Michael Arnett
M. Michael Arnett, OBA# 12071
ARNETT LAW FIRM
3133 N.W. 63rd St.
Oklahoma City, OK 73116
Telephone: (405) 767-0522
Facsimile: (405) 767-0529
Email: mikearnett1@juno.com
Attorney for Petitioner

## CERTIFICATE OF SERVICE

I hereby certify the foregoing Petition Under 27 U.S.C. § 2254 for a Writ of Habeas Corpus & Request for an Evidentiary Hearing was served on 17th day of April, 2017, in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

/s M. Michael Arnett
M. Michael Arnett

25